LUCERO, Circuit Judge,
concurring.
Because the majority correctly concludes that Hawkins’ claim of ineffective assistance of counsel is procedurally barred, I join the opinion of the court. If relief from procedural proscription is to be afforded to this defendant, such relief must come from higher authority.
*679 I write separately to note that the opinion of the court should not be read as an imprimatur of approval on the unacceptable practice of trial lawyers forsaking their duties to investigate potential mitigating evidence, to inform defendants of their constitutional right to present mitigating evidence, and to explain the general significance of mitigating evidence to clients in capital cases. This is a serious matter, and I am concerned with what I view as a disturbing tendency on the part of defense counsel to forego mitigation investigation altogether and to neglect to explain to defendants the potential value of the specific evidence that could be offered in order to allow a jury to have a complete picture in deciding a death sentence issue. See, e.g., Battenfield v. Gibson, 236 F.3d 1215, 1227-29 (10th Cir.2001) (trial counsel failed to investigate and present mitigating evidence during the second stage of a capital case); Hale v. Gibson, 227 F.3d 1298, 1314-16 (10th Cir.2000) (same), cert. denied, 533 U.S. 957, 121 S.Ct. 2608, 150 L.Ed.2d 764 (2001); Mayes v. Gibson, 210 F.3d 1284, 1289 (10th Cir.) (same), cert. denied, 531 U.S. 1020, 121 S.Ct. 586, 148 L.Ed.2d 501 (2000); Boyd v. Ward, 179 F.3d 904, 917-19 (10th Cir.1999) (same); Newsted v. Gibson, 158 F.3d 1085, 1099-100 (10th Cir.1998) (same). When the state contends that a capital defendant has waived the right to present mitigating evidence, information regarding trial counsel’s investigative efforts with respect to mitigation, along with facts and advice rendered by counsel to the client, enables us to sharply focus our record review to determine whether the waiver was knowing and intelligent.
I
Before the Oklahoma Court of Criminal Appeals (“OCCA”), Hawkins argued that “by acquiescing to his demand trial counsel denied him effective assistance, and that by allowing trial counsel to present nothing the trial court allowed him to commit ‘state sanctioned suicide.’ ” Hawkins v. State, 891 P.2d 586, 598 (Okla.Crim.App. 1995). As the court’s opinion notes, this argument is different from the one Hawkins has presented to the federal courts. Because the failure-to-investigate-and-present-mitigating evidence argument has not been presented to the Oklahoma state courts, it has not been exhausted, and at this point the state courts would consider it procedurally barred. Consequently, we are unable to review the merits unless Hawkins can demonstrate cause and prejudice for the default or establish that a fundamental miscarriage of justice will result if the merits "of the claim are not addressed. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Hawkins has argued that his ineffective assistance of counsel claim is not procedurally barred because it was raised on direct appeal (R. Doc. 21 at 10-11) but has not argued cause and prejudice for the default or that a fundamental miscarriage of justice will result if the merits of this claim are not addressed.
Had Hawkins pursued a fundamental miscarriage of justice argument, it is unlikely that it would have succeeded because a petitioner must demonstrate that “a constitutional violation has probably resulted in the conviction of one who is actually innocent.” Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To demonstrate “actual innocence” in a capital case, “one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.” Sawyer v. Whitley, 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). I hope that the Supreme Court will one day reevaluate this premise be *680 cause the Court has consistently acknowledged that exceptions to the strict rules of unreviewability in habeas claims “must exist to prevent violations of fundamental fairness.” Id. at 351, 112 S.Ct. 2514 (Blackmun, J., concurring in the judgment). One exception to the above standard should exist when mitigating evidence is absent from a capital trial because counsel has failed to investigate its existence, neglected to explain its significance to the defendant, and has acquiesced in the defendant’s “waiver” of his right to present such evidence. Instead, the current actual innocence standard “implicitly repudiates the requirement that the sentencer be allowed to consider all relevant mitigating evidence, a constitutive element, of our Eighth Amendment jurisprudence.” Id. at 368, 112 S.Ct. 2514 (Stevens, J., concurring in the judgment). ,
II
Defendants have a constitutionally protected right to present mitigating evidence during the sentencing phase of a capital case. Williams v. Taylor, 529 U.S. 362, 393, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); see also Sawyer, 505 U.S. at 342-43, 112 S.Ct. 2514 (“[Tjhe defendant must be permitted to introduce a wide variety of mitigating evidence pertaining to his character and background.”); Hitchcock v. Dugger, 481 U.S. 393, 394, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (“[I]n capital cases, the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence.” (quotation omitted)). In discussing the constitutionality of the death penalty, the Supreme Court has noted that sentencing discretion in capital cases must be “ ‘directed and limited’” to ensure that the death penalty is “imposed in a more consistent and rational manner.” Lockett v. Ohio, 438 U.S. 586, 601, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (quoting Gregg v. Georgia, 428 U.S. 153, 188-89, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (judgment of the Court and opinion of Stewart, Powell, and Stevens, JJ.)). Part of directing sentencing discretion is requiring the sentencer to consider mitigating evidence — such as character and criminal history evidence — in addition to the circumstances of the particular offense. See Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion); Lockett, 438 U.S. at 604, 98 S.Ct. 2954 (“[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.”).
Consideration of mitigating factors allows a jury to make an individualized sentencing determination based upon the defendant’s specific life experiences and characteristics. Battenfield, 236 F.3d at 1228. No individual is so devoid of redeeming characteristics at some stage of life that not one word can be said at the sentencing phase asking that the defendant’s life be spared. Humanizing the defendant is important in ensuring that he is not reduced solely to the violent acts that caused his conviction. “The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence.” Lockett, 438 U.S. at 605, 98 S.Ct. 2954. However, when nothing whatsoever is advanced on behalf of a defendant by his advocate, the sentencer will likely draw negative inferences from such silence.
Ill
Hawkins contends that his trial counsel did not investigate mitigating evidence or *681 adequately explain its import to him, thus preventing him from knowingly and intelligently waiving his right to present such evidence. After the jury returned a guilty verdict, Hawkins instructed counsel “not to do anything else in the way of defending [him].” (Appellant’s Direct Appeal Br. at 22.) Consequently counsel did not make an opening statement, present mitigating evidence, or make a closing statement. (Id. at 23.)
The Sixth Amendment requires counsel “to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Included within this duty is a responsibility to investigate a defendant’s background for potential mitigating evidence. Batten-field, 236 F.3d at 1228.
This Court has used the following factors to examine an ineffective assistance of counsel claim based on counsel’s failure to prepare or present any mitigating evidence during the penalty phase of a capital trial after the defendant instructed counsel not to present any mitigating evidence: (1) investigative efforts of defense counsel pri- or to the beginning of the penalty phase, (2) counsel’s penalty phase strategy, (3) advice rendered to defendant prior to defendant’s alleged decision to waive the presentation of mitigating evidence, and (4) trial court’s examination of defendant regarding his alleged waiver. Id. at 1227.[1]
Without investigating possible mitigating evidence, counsel will not be able to make a reasonable tactical choice not to present mitigating evidence. Absent investigation, counsel will also be unable to adequately advise a defendant to knowingly and intelligently waive his right to present mitigating evidence. See Blanco v. Singletary, 943 F.2d 1477, 1502 (11th Cir.1991) (noting that a defendant’s desire not to present mitigating evidence does not terminate counsel’s responsibilities at the sentencing phase, and that counsel may not “blindly follow” such commands because “although the decision whether to use such evidence is for the client, the lawyer first must evaluate potential avenues and advise the client of those offering potential merit.” (quotation omitted)). Although failing to present mitigating evidence does not make counsel per se ineffective, before such a decision will be deemed strategic, counsel “must have chosen not to present mitigating evidence after having investigated the defendant’s background, and that choice must have been reasonable under the circumstances.” Brecheen v. Reynolds, 41 F.3d 1343, 1369 (10th Cir.1994) (quotation omitted); see also Hale, 227 F.3d at 1316 (concluding that trial counsel’s complete failure to investigate possible mitigation evidence caused his performance to be “well below the level of any competent attorney during the penalty phase”); Mayes, 210 F.3d at 1289-90 (concluding that counsel’s decision not to investigate possible mitigating evidence was unreasonable). Although strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable, “strategic choices made after less *682 than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052; see also Romano v. Gibson, 239 F.3d 1156, 1181 (10th Cir. 2001). In other words, “counsel has a duty to make reasonable investigations or to make a reasonable decision that- makes particular investigations unnecessary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052.
When the state contends that a capital defendant waived the presentation of mitigating evidence, an appellate court must be especially watchful before crediting the allegation. We must ensure that defendant was informed that he has a right to present mitigating evidence; that defendant was apprised of the nature, role, and importance of mitigating evidence; and that counsel undertook an investigation to discover mitigating evidence, or else explained to the defendant why such investigation did not take place. See, e.g., Wallace v. Ward, 191 F.3d 1235, 1248 (10th Cir.1999) (concluding that petitioner’s trial counsel was not ineffective in failing to investigate or present mitigating evidence during the sentencing phase of a capital case because under “the unique facts of this case,” petitioner waived his right to present such evidence after being informed about the nature and importance of mitigating evidence).
Interestingly, sometime after Hawkins’ conviction, the OCCA established formal guidelines for trial courts to follow “when a defendant refuses to allow the presentation of mitigating evidence in the sentencing stage.” Wallace v. State, 893 P.2d 504, 512 (Okla.Crim.App.1995). These guidelines require a trial court to: (1) inform the defendant of the right to present mitigating evidence, and what mitigating evidence is; (2) inquire both of the defendant and his attorney (if not pro se) whether he or she understands these rights; (3) inquire of the attorney if he or she has attempted to determine from the defendant whether any mitigating evidence exists; (4) have trial counsel advise the court what mitigating evidence exists; (5) inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and understands the effect of failing to present that evidence; (6) inquire, after being assured the defendant understands these concepts, whether defendant desires to waive the right to present such mitigating evidence; and (7) make findings of fact regarding the defendant’s understanding and waiver of rights. Id. at 512-13. Despite our observation that these guidelines appear to be “little more than commonsense,” Battenfield, 236 F.3d at 1233, and that courts should apply them without being expressly instructed to do so, the trial court in Hawkins’ case conducted no such inquiry regarding his waiver of the right to present mitigating evidence.
In keeping with our prior holdings, I would conclude that, as a constitutional minimum, failing to interview family members and acquaintances regarding possible mitigating aspects of a defendant’s background would be a violation of counsel’s duty to investigate because such investigation is almost always necessary in a capital case. See, e.g., Battenfield, 236 F.3d at 1228; Brecheen, 41 F.3d at 1368-69.
Absent an evidentiary hearing, it is practically impossible to determine the extent of trial counsel’s investigation regarding potential mitigation evidence in the present case. We do, however, have two affidavits from Hawkins’ siblings, both of *683 whom stated that they were not contacted by trial counsel but that they would have testified had they been contacted. (R. Doc. 14 App. C at 1; id. App. E at 1-2.) We also have a social worker’s report on Hawkins as a juvenile (id. App. F) and a 1968 docket entry sheet regarding the conviction of Hawkins’ father for unlawful possession of a firearm (id. App. D). The record does not reveal whether trial counsel ever possessed or sought this information. It is precisely in cases such as this that it is critical for habeas courts to have the opportunity to review the merits of ineffective assistance of counsel claims based on trial counsel’s failure to investigate possible mitigating evidence in capital cases. In previous cases we have concluded that trial counsel was constitutionally ineffective for failing to conduct such investigation. Yet because of the limited opportunity that federal courts have to review state court convictions and sentences, we are unable to determine if Hawkins’ trial counsel was constitutionally deficient in failing to investigate possible mitigation evidence and whether, as a result of such deficient performance, there is a reasonable probability that “the senteneer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052.

. Based on the evidence presented at the state evidentiary hearing in Battenfield, we concluded that "there is no indication [counsel] ever explained the general meaning of mitigation evidence to [defendant] or what specific mitigation evidence was available,” and that "[counsel's] failure to investigate clearly affected his ability to competently advise [defendant] regarding the meaning of mitigation evidence and the availability of possible mitigation strategies.” Id. at 1229. Consequently, counsel’s performance was deficient and "culminated in [defendant] waiving the right to present mitigating evidence,” id. at 1230, resulting in a waiver that' was neither knowing nor intelligent, id. at 1233.